UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ANDREW SCHMITT

                    Plaintiff,                              MEMORANDUM AND ORDER
                                                          15-CV-05992

     - against -

CITY OF NEW YORK, NOE CAMPOS, and TIN
MAI, in their individual capacities,

                    Defendants.
----------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiff Andrew Schmitt ("Schmitt") brought this action against his employer, Defendant

City of New York, and his former supervisors, Defendant Noe Campos ("Lt. Campos") and

Defendant Tin Mai ("Sgt. Mai"), (collectively, "Defendants"), alleging disability discrimination,

a hostile work environment, failure to provide reasonable accommodations, and retaliation in

violation of the Americans with Disabilities Act ("ADA"), New York State Human Rights Law

("NYSHRL"), New York City Human Rights Law ("NYCHRL"), and 42 U.S.C. § 1983.  Schmitt

withdrew his 42 U.S.C. § 1983 claims.  Defendants now move for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure on the Human Rights claims.  For the reasons

explained below, Defendants' motion is **DENIED**.

## BACKGROUND

       Unless otherwise noted, the following facts are undisputed.

**The Parties**

       Schmitt is and has been a police officer employed by the New York City Police Department

("NYPD") since 1999.  (Complaint ECF No.1 ("Compl.") ¶ 9).  In April 2000, Schmitt was

assigned to Transit District 34 ("TD 34"), a precinct in Brooklyn, New York.  (Plaintiff's Rule

56.1 Counterstatement of Undisputed Material Facts ECF No. 35 ("Rule 56.1") ¶ 2). In 2011, Sgt. Mai was also assigned to TD 34 as was Lt. Campos in 2014, who was Sgt. Mai's supervisor. (*Id.* at ¶¶ 8, 10). Prior to taking medical leave in 2013, Schmitt experienced no adverse issues at TD 34 and received positive annual performance evaluations. (Compl. ¶ 10).

**Schmitt's Medical Conditions**

Schmitt was on duty during the September 11, 2001 terrorist attacks. He contends that as a result of his work assignments on that day, he developed irritable bowel syndrome ("IBS"), hyponatremia, and orthostatic hypotension. (Compl. ¶ 11). He was diagnosed with hyponatremia in August 2014. It is unclear when he was diagnosed with IBS and orthostatic hypotension. His IBS requires frequent bathroom trips. (Compl. ¶ 12). His hyponatremia and orthostatic hypotension cause him to experience vertigo, faintness, lightheadedness, dizziness, nausea, and fatigue when he is assigned to positions requiring prolonged standing or are heated. (Compl. ¶ 13). In April 2006, while on duty, he was in a car accident resulting in a herniated disk in his back. (Compl. ¶ 16). The herniated disk causes the same symptoms as the hyponatremia and orthostatic hypotension if he is required to stand for long periods of time. (*Id.*) He also had foot surgery at some point. (Schmitt Depo. at 134:19-21). On January 9, 2013, he received a note from the NYPD Medical Division authorizing him to wear black sneakers, rather than the boots that were mandated by the NYPD. (Declaration of Natalie S. Marcus ECF No. 29 ("Marcus Decl."), Exhibit V). He was told to keep this note in his pocket at all times in case he was questioned by supervisors regarding his sneakers. (Schmitt Depo. at 136:24-137:4).

Schmitt is also a recovering alcoholic. (Compl. ¶ 17). On June 14, 2013, he entered the Police Officers Providing Peer Assistance ("POPPA") program to address his alcoholism. (Compl. ¶ 21). Participation in the program is supposed to be confidential and while in it, he was designated

as "confidential sick" by the NYPD. (*Id* at. ¶ 22). Only supervisors have access to those designations. (*Id.*) Six months later, upon successful completion of that program, he returned to TD 34 and was considered a "full duty" officer until July 2014. (*Id.* at ¶ 23).

**Alcohol-Related Advertisements and Cartoons**

The day after returning to TD 34, Schmitt found alcohol-related advertisements posted on his locker, the poster board in the male locker room, and the poster board in the lunch room. (Rule 56.1 ¶ 25). The advertisements were for "Captain Morgan," a brand of rum. (*Id.*) He removed these advertisements and did not report them to his supervisors. (*Id.* at ¶¶ 26, 30).

Various alcohol-related advertisements, photographs, and cartoons continued to be posted around TD 34 for the next several months. Schmitt does not know who posted them. (Schmitt Depo. at 34:5-11). He continued to discard them. (Compl. ¶ 27). In March 2014, he took a photograph of a cartoon posted on the podium of the precinct muster room, where all precinct personnel gather to receive their assignments. (Compl. ¶ 25). The cartoon depicted a person to whom two IV tubes and medicine bags were attached, one reading "scotch" and the other "kool aid." "Schmidt" was written atop the person's head. (*See* Compl., Exhibit 2). The cartoons were understood to be referring to Schmitt and continued to be posted around the precinct almost every day until July 2014. (Compl. ¶ 28).

**Schmitt's Assignment to the Unairconditioned Patrol Vehicle**

During the first two weeks of July, Schmitt and his partner were assigned to a patrol vehicle that was not airconditioned. (Compl. ¶ 29; Rule 56.1 ¶ 46). Schmitt asked Sgt. Mai to reassign him because the heated car was making him feel sick. (Compl. ¶ 30). Sgt. Mai assigned him instead to a post that was hotter than the unairconditioned patrol car. (Compl. ¶ 33; Rule 56.1 ¶¶ 50-51).

The next day, following an evaluation by the Medical Division, Schmitt was assigned to desk duty and his official duty status was changed from "full duty" to "limited duty." (*Id.* at ¶ 58). A "limited duty" police officer cannot have prisoner contact, go on patrol, or operate a patrol car. (Rule 56.1 ¶ 6). From July 12 until July 21, he was assigned desk work which included serving as a Telephone Switchboard Operator and Assistant Desk Officer. (*Id.* at ¶ 60). On July 21, 2014, he visited his personal doctor, Dr. Alexander, who addressed a letter to the NYPD Medical Division advising that "it is recommended that [Schmitt] stay on light duty until all clinical testing has been completed." (Rule 56.1 ¶ 62; Exhibit J).

**Schmitt's Transfer to Sgt. Mai's Squad**

Two days after that NYPD Medical Division recommendation, Schmitt received a text message from Officer Rodriguez stating "Rumors going around that sgt mai want you in her sqd to fuck with you . . . Just a heads up." (Rule 56.1 ¶ 64; Marcus Decl., Exhibit L). Other police officers told him that Sgt. Mai referred to him as a "fucking scammer" in front of them and supervisors, (Rule 56.1 ¶ 65), and Sgt. Mai said that about him "all the time." (Pierre Depo. at 55:20-22; Rodriguez Depo. At 41:10-15). Lt. Campos also called him a "sick leave abuser" in front of other police officers and supervisors. (Ward Depo. at 56:4-11; 69:6-23).

In keeping with Sgt. Mai's rumored desire to get Schmitt transferred to her squad, Lt. Campos made a request on August 1, 2014 to NYPD Captain Taschas to transfer Schmitt to Sgt. Mai's squad because it was undermanned. (Rule 56.1 ¶ 66). Despite the fact that he was on "limited duty," was not permitted to have prisoner contact or go out on patrol, and his own squad was undermanned, Schmitt was transferred.

**Schmitt's Assignments as "Door Greeter"**

On July 25, 2014, the NYPD Medical Division issued a Treating Physicians Summary Report, which acknowledged Schmitt's inability to stand for a "prolonged" period. (Schmitt Declaration ECF No. 35-1 ("Schmitt Decl."), Exhibit 8). On the first day Schmitt reported for duty in Sgt. Mai's squad, Sgt. Mai assigned him as a "door greeter," which typically involves an officer sitting at a desk by the front door of the precinct to direct civilians. (Compl. ¶ 42). Except on that day, no chair was available at the front door. (*Id.*) Schmitt asked Sgt. Mai for one, informing her that he is unable to stand for long periods of time. (*Id.*) Sgt. Mai ignored his request and told him "You're to stand there all day, and only take only [sic] 2 personal necessity breaks, which may only last 20 minutes." (*Id.*) Schmitt was observed by Officer Rodriguez at that time "in pain holding onto the rail of the entrance." (Rodriguez Depo. at 50:24-25). The next day, he was re-assigned as "door greeter" and still with no chair available. (Compl. ¶ 46).

**Schmitt's Assignments as Prisoner Cell Attendant**

On August 7, 2014, Schmitt's duty status was changed from "limited duty" to "restricted duty," which automatically occurs 30 days after an officer is placed on limited duty.[1] (Rule 56.1 ¶ 59). On that day, he was assigned as the Arrest Processing Officer and prisoner cell attendant. (Compl. ¶ 48). On that post, he was not permitted to leave the cell area for any reason. (Compl. ¶ 50). When Schmitt was assigned there, the air conditioner was turned off. (Compl. ¶ 53; Rodriguez Depo. at 59:2-15). When he complained to Sgt. Mai about the heat, she told him to bring a fan. (Rule 56.1 ¶ 116). Only supervisors have access to the control panels for the air conditioning and heating systems. (Schmitt Depo. at 94:22-23).

---

[1] The difference between a "limited duty" and "restricted duty" police officer is not clear from the parties' submissions.

On August 13, 2014, Lt. Campos chastised Schmitt for taking a personal break for over 20 minutes. (Compl. ¶ 64). Schmitt told Lt. Campos that he has IBS and acid reflux, both requiring frequent trips to the bathroom. (*Id.*) On September 5, 2014, Schmitt was assigned to the unairconditioned cell area again. (Compl. ¶ 67). He needed to use the bathroom, but did not want to defecate in the prisoner bathroom inside that area because it was unclean and there was a window through which prisoners can be seen at all times. (*Id.*) Lt. Campos ignored his need.

On September 15, 2014, Schmitt received a letter from his neurologist which provided that: "[d]ue to [Schmitt's] medical condition and the medications, he should not be in direct contact with prisoners or using a weapon. In my medical opinion, desk duty would be appropriate for the patient." (Schmitt Decl., Exhibit 9). It is unclear whether he gave this letter to the NYPD Medical Division, but he was mostly assigned to the prisoner cell area from August 1 to November 23, 2014. (Compl. ¶ 76).

**Schmitt Receives Violation for Orthopedic Sneakers**

On November 5, 2014, Schmitt came to work wearing black orthopedic sneakers. (Compl. ¶ 71). When asked why he was not wearing the required boots, he showed Sgt. Mai the note authorizing him to wear the sneakers due to his foot surgery. (*Id.*) Sgt. Mai ignored the letter and gave him a violation. (*Id.*)

**Schmitt's Complaints**

On August 4, 2014, Schmitt contacted the NYPD Office of Equal Employment Opportunity ("EEO Office") to report Sgt. Mai's physically prejudicial assignments and the alcohol-related advertisements and cartoons from the previous months. (Compl. ¶ 58; Rule 56.1 ¶ 87, 94). At that time, he also told the EEO Office that he was institutionalized the previous year due to his alcoholism. (Rule 56.1 ¶ 92). On August 14, he contacted the EEO Office again to

report his assignment to the unairconditioned cell area, but no action was taken.  (Rule 56.1 ¶ 127).  On October 7, 2014, he filed a formal complaint with the New York State Division of Human Rights alleging discrimination.  (Compl. ¶ 69).  Other police officers told him that he "was a dead man" because he "started a shit storm" by filing this complaint.  (Compl.  ¶ 70; Schmitt Depo. at 132:23-134:5).  He was also told that his supervisors were going "absolutely bonkers" over it.  (*Id.*)  On June 24, 2015, that complaint was dismissed for administrative convenience and one month later, he was notified of his right to sue and he filed this action.  (Compl. ¶¶ 85, 87).

## DISCUSSION

### I.    Summary Judgment Standard of Review

Summary judgment is appropriate when there are "no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  A genuine issue of material fact exists if a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 248 (1986).  The moving party has the burden to demonstrate the absence of a genuine issue of material fact, and the Court must draw all reasonable inferences in favor of the non-moving party.  *Id.* at 255.

If the summary judgment movant satisfies its initial burden of production, the burden of proof shifts to the non-movant who must demonstrate that a genuine issue of fact does exist.  *Id.* at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586.  Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Once

the nonmovant has met that requirement, its "allegations [will be] taken as true, and [it] will receive the benefit of the doubt when [its] assertions conflict with those of the movant." *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996).

The Court's role in a motion for summary judgment is one of "issue-finding," not "issue-resolution." *Ramirez v. New York City Bd. of Educ.*, 481 F. Supp. 2d 209, 216 (E.D.N.Y. 2007). Therefore, the Court's charge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The Second Circuit applies the same summary judgment standard in employment discrimination cases. *Ramirez*, 481 F. Supp. 2d at 216. In employment discrimination cases, courts are particularly cautious about granting summary judgment where intent is at issue. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). Motions for summary judgment in employment discrimination actions are rarely granted because "a victim of discrimination is . . . seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence . . . . Consequently . . . where a defendant's intent and state of mind are placed at issue, summary judgment is ordinarily inappropriate." *Ramirez*, 481 F. Supp. 2d at 216 (citing *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991)).

## II.     Schmitt's Hostile Work Environment Claims

Schmitt used the words "hostile environment" for the first time in his October 10, 2016 pre-motion conference letter. (*See* Marcus Decl. Ex. FF). Defendants argue that that he cannot raise a hostile work environment claim for the first time at this stage in the litigation. The Court disagrees. "Generally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim." *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 (2d Cir. 1980).

Although the Complaint does not explicitly allege discrimination based on the words "hostile work environment," the Complaint reeks with that grievance. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240-41 (2d Cir. 2007) ("At the pleading stage of the case, however, plaintiffs need not plead a *prima facie* case of discrimination based on hostile work environment, so long as they provide in the complaint a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant fair notice of plaintiffs' claim for hostile work environment and the grounds upon which that claim rests."); *see also Westbrook v. City Univ. of New York*, 591 F. Supp. 2d 207, 223 (E.D.N.Y. 2008) ("Given the simplified notice pleading standards applicable here and the fact that the parties have briefed the retaliation and hostile work environment claims, the court regards these claims as proper for consideration on a motion for summary judgment.") (internal citations omitted).

The Second Circuit has not yet decided whether hostile environment claims are cognizable under the ADA. *Dollinger v. New York State Ins. Fund*, 726 F. App'x 828, 831 (2d Cir. 2018). On the assumption that it might be, the standard for evaluating hostile work environment claims under the ADA and NYSHRL is identical to the standard under Title VII. *Giambattista v. Am. Airlines, Inc.*, 5 F. Supp. 3d 284, 294 (E.D.N.Y.), *aff'd*, 584 F. App'x 23 (2d Cir. 2014); *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). To plead a prima facie hostile work environment claim, a plaintiff must show "that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 WL 5561209, at *13 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016). This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a

reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* A plaintiff must also plead facts that show that the conduct created such an environment because of the plaintiff's disability. *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 156 (E.D.N.Y. 2015).

When determining whether a reasonable person would find a work environment to be hostile, courts must look to the totality of the circumstances and should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 190 (E.D.N.Y. 2008); *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). The Second Circuit has noted that "[w]hile the standard for establishing a hostile work environment is high, . . . [t]he environment need not be unendurable or intolerable." *Terry*, 336 F.3d at 148. Further, while a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact work[s] as a transformation of the plaintiff's workplace." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004).

Schmitt makes several allegations in support of his hostile work environment claim. In considering the totality of the circumstances, the Court concludes there are genuine issues of material fact as to whether the harassment by his supervisors was so "severe or pervasive" that it altered the conditions of his employment and created an abusive work environment. Defendants claim that summary judgment should be granted because calling Schmitt a "scammer" is rude but does not establish a hostile work environment, locker room cartoons are more akin to "simple teasing," and that the alleged behavior and comments are unactionable "petty slights and trivial inconveniences." (ECF No. 26 at 16-17). Defendants are asking the Court to "view individual

incidents in isolation" and "view the record in a piecemeal fashion," but that is not the proper way to address Schmitt's hostile work environment claims. *Howard v. Cannon Indus., Inc.*, No. 11-CV-6100 (CJS), 2012 WL 5373458, at *6 (W.D.N.Y. Oct. 30, 2012).

While calling Schmitt a "scammer" and posting alcohol-related cartoons do not, on their own, establish a hostile work environment, there is a genuine issue of fact as to whether those characterizations by Sgt. Mai and her harsh assignments evidence her intent to punish Schmitt for taking sick leave and whether Sgt. Mai and Lt. Campos told other officers about his sick leave in disregard of its confidentiality, thus sparking the postings mocking his disability. Other District Courts in this Circuit have held that a jury could conclude that a supervisor's comments made in front of plaintiff's colleagues, and ranged from tasteless to cruel and humiliating, created a hostile work environment. *Breeding v. Cendant Corp.*, No. 01 CIV. 11563 (GEL), 2003 WL 1907971, at *5 (S.D.N.Y. Apr. 17, 2003).

Defendants also argue that "none of the alleged behavior or comments were physically threatening." (ECF No. 26 at 17). The Court disagrees. There is a genuine issue of fact whether Schmitt's assignments to "door greeter" without a chair and to the heated cell area, Defendants' rejection of his bathroom requests, refusal to transfer him to a cooler post, questioning his wearing of black orthopedic sneakers, and penalizing him for taking too many personal breaks due to his IBS were physically threatening.

Schmitt must also show that Defendants created a hostile work environment because of his disability. *Dechberry*, 124 F. Supp. 3d at 156. Defendants knew that Schmitt was on confidential sick leave to treat his alcoholism. However, there is a genuine issue of fact as to whether Defendants' conduct after Schmitt returned from sick leave was because he was "scamming" the sick leave system rather than because he is an alcoholic. If it is found to be the former, then he

would not be able to prove that he was subject to a hostile work environment because of his alcoholism.

The Court acknowledges that there are issues of fact as to whether Sgt. Mai and Lt. Campos knew about Schmitt's symptoms relating to his IBS, orthostatic hypotension, and hyponatremia before giving him assignments that exacerbated his symptoms. Schmitt was diagnosed with hyponatremia in August 2014, but did not contact the Medical Division about this condition until November. It is unclear whether he ever told the Medical Division about his orthostatic hypotension or IBS. However, he alleges that he did tell Lt. Campos and Sgt. Mai about his symptoms relating to these conditions. Lt. Campos testified that Schmitt told him that he "suffered from some medical issues" and that he spoke with Schmitt about "many sick ailments, like stomach ailments . . . ." (Campos Depo. at 15:2-5). Lt. Campos also testified that Schmitt was constantly complaining about "his stomach, his head. Everything. His feet. Everything." (Campos Depo. at 59:1-6). Although some symptoms are so obviously attributable to an underlying disability so that it would be reasonable to infer that an employer knew of the disability, there is a genuine issue of fact as to whether that is the case here. *Paladino v. DHL Express (USA), Inc.*, No. 07-CV-1579 (DRH), 2010 WL 1257786, at *10 (E.D.N.Y. Mar. 26, 2010); *see also Cozzi v. Great Neck Union Free Sch. Dist.*, No. 05-CV-1389 (ENV), 2009 WL 2602462, at *14 (E.D.N.Y. Aug. 21, 2009) ("[A]n employer's knowledge of a plaintiff's symptoms does not establish, as a matter of law, that it knew the plaintiff was disabled."); *see also Moore v. Time Warner GRC 9*, 18 F. Supp. 2d 257, 262 (W.D.N.Y.2000) (finding that "[m]ere knowledge that [plaintiff] suffered from diabetes or hypertension is not equivalent to knowing that his condition 'disabled' him within the meaning of the ADA."). Because the issue as to that knowledge bears on the issue of intent and raises genuine

issues of fact, Defendants' motion for summary judgment on Schmitt's hostile environment claims under the ADA and NYSHRL is denied.

Schmitt also brings a hostile work environment claim under the NYCHRL. The NYCHRL's protections are even broader than those of the ADA and the NYSHRL. A plaintiff can seek relief under the NYCHRL without demonstrating that the harassment was severe or pervasive. *Forgione v. City of New York*, No. 11-CV-5248, 2012 WL 4049832, at *7 (E.D.N.Y. Sept. 13, 2012). A plaintiff states a claim under the NYCHRL when he pleads that he was "treated less well than other employees because of his protected class." *Id.* An employer may avoid liability by the affirmative defense that "the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *Id.*

Schmitt alleges that he was subjected to months of alcohol-related advertisements mocking his disability, that Defendants ignored his existing accommodations, that Defendants purposely assigned him to posts that exacerbated his symptoms, and that they repeatedly called him a "fucking scammer" in front of other officers and supervisors. These allegations alone create a genuine issue of material fact as to whether Defendants "treated [Schmitt] less well than other employees because of his [disabilities]." *Id.* For the same reasons discussed above, Defendants' motion for summary judgment of Schmitt's hostile work environment claim under the NYCHRL is denied.

## III.    Schmitt's Disability Discrimination Claims

The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The ADA defines discrimination on the basis of disability as, among other things, "limiting, segregating, or classifying a[n] . . . employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such . . . employee." 42 U.S.C. § 12112. In discrimination claims brought under the ADA, NYSHRL, and NYCHRL, the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973), applies. *Ferraro v. Kellwood Co*, 440 F.3d 96, 99 (2d Cir. 2006); *Micari v. Trans World Airlines, Inc.*, 43 F. Supp. 2d 275, 279 (E.D.N.Y.), *aff'd*, 205 F.3d 1323 (2d Cir. 1999). The framework requires a plaintiff to establish a *prima facie* case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action in question. *Ferraro v. Kellwood Co*, 440 F.3d at 100. Once the defendant proves such a reason, the burden shifts back to the plaintiff to show "sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext" for discrimination. *Id.* (internal citations omitted).

To establish a *prima facie* case of discrimination, Schmitt must prove: (1) Defendants are subject to the ADA; (2) he is disabled within the meaning of the ADA and NYHRL; (3) he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Micari*, 43 F. Supp. 2d at 279. Defendants do not dispute that he can establish the first three elements.[2]

---

[2] There is a genuine issue of material fact whether Schmitt's IBS is a disability within the meaning of the ADA. If his IBS is asymptomatic for long periods of time and varies in intensity, his IBS will not qualify as a disability under the ADA because it does not create a "substantial limitation." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867. 871 (2d Cir. 1998) (holding that plaintiff's colitis was not a disability under the ADA despite its permanent affliction).

Defendants argue that (1) Schmitt did not suffer adverse employment actions and (2) even if he did, the adverse employment actions were not attributable to his disability. A plaintiff suffers an "adverse employment action" under the ADA when "he or she endures a materially adverse change in the terms and conditions of employment." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 434 (E.D.N.Y. 2015). A materially adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* Examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, and significantly diminished material responsibilities." *Id.* "Where assignments fall within the duties of a plaintiff's position, receiving unfavorable . . . work assignments does not rise to the level of an adverse employment action." *Id.*

Construing the record in a light most favorable to Schmitt, the Court finds there is a genuine issue of material fact as to whether the assignments given to him when he returned from sick leave fell outside the duties of a police officer at TD 34. In addition, a jury could find that Schmitt's transfer to Sgt. Mai's squad so that Sgt. Mai could "fuck with" him is considered an adverse employment action. *Terry*, 336 F.3d at 144 (finding that transferring an employee "with the intent to harass him" may be a material adverse employment action in the context of a retaliation claim, where that employee "put forth evidence sufficient to permit a trier-of-fact to conclude that his supervisors believed that he would find the new assignment to be adverse.").

Defendants argue that there were legitimate, non-discriminatory reasons for their actions because Sgt. Mai's squad was undermanned prior to Schmitt's transfer and there were limited positions available at TD 34 because of Schmitt's duty status. First, there is a genuine issue of fact regarding Sgt. Mai's intent behind her transfer request. As Defendants point out, Schmitt was on

limited duty at the time of the transfer and was of limited use to Sgt. Mai's undermanned squad. Second, there is an issue of fact whether there were other positions available when Schmitt was assigned as "door greeter" and prisoner cell attendant. For example, from July 12 through July 21, 2014, Schmitt was assigned desk work. Defendants do not address whether he could have been assigned desk work on those days.

As to Defendants' second argument and as discussed above, there is a genuine issue of material fact whether Defendants' conduct was a result of their belief that Schmitt was scamming the sick leave system, or because of Schmitt's alcoholism and other disabilities. Therefore, because Schmitt has demonstrated a genuine issue of material fact as to whether he was subject to adverse employment actions because of his disability, Defendants' motion for summary judgment of his discrimination claims under the ADA and NYSHRL is denied.

The NYCHRL is construed more liberally than its state and federal counterparts. *Makinen v. City of New York*, 857 F.3d 491, 495 (2d Cir. 2017), *certified question accepted*, 29 N.Y.3d 1019, 77 N.E.3d 889 (2017), and *certified question answered*, 30 N.Y.3d 81, 86 N.E.3d 514 (2017). To satisfy the adverse action prong under the NYCHRL, Schmitt need only show that he was "treated differently from others in a way that was more than trivial, insubstantial, or petty" because of his disability. *Varughese v. Mount Sinai Med. Ctr.*, No. 12 CIV. 8812 (CM), 2015 WL 1499618, at *39 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 693 F. App'x 41 (2d Cir. 2017). For the same reasons discussed above, Defendants' motion for summary judgment of Schmitt's discrimination claim under the NYCHRL is denied.

## IV. Schmitt's Reasonable Accommodation Claims

A plaintiff states a claim for discrimination based upon his employer's failure to accommodate his handicap by alleging facts showing: (1) that the employer is subject to the ADA;

(2) that the plaintiff is an individual with a disability within the meaning of the ADA; (3) that, with or without reasonable accommodation, the plaintiff could perform the essential functions of his job; and (4) that the employer had notice of the plaintiff's disability and failed to provide reasonable accommodation. *Micari*, 43 F. Supp. 2d at 283. Schmitt claims Defendants failed to give him reasonable accommodations for his IBS, orthostatic hypotension, and hyponatremia. Defendants do not contest the first three elements,[3] but claim that Schmitt received reasonable accommodations.

The ADA and the NYSHRL require an employer to afford reasonable accommodation of an employee's known disability unless the accommodation would impose an undue hardship on the employer. *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). The reasonableness of an employer's accommodation is a "fact-specific" question that often must be resolved by a factfinder. *Id.* Defendants argue that in cases like this one, where the employer has already taken or offered measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is "plainly reasonable." *Id.*

Defendants claim that they gave Schmitt plainly reasonable accommodations because "he was provided with assignments that respected the limitations placed on his ability to perform full duty assignments" and Sgt. Mai offered to let him take the rest of the day off after he asked to be moved to a cooler post. (ECF No. 26 at 22). A reasonable accommodation is one that enables an individual with a disability who is qualified to perform the essential functions of that position to enjoy equal benefits and privileges of employment. *Noll*, 787 F.3d at 94. Defendants did not give

---

[3] As noted above in footnote 1, depending on the severity of Schmitt's IBS, his IBS may not qualify as a disability within the meaning of the ADA.

that to Schmitt. Black orthopedic sneakers and a chair would not have caused undue hardship to the NYPD. Further, knowing full well that Schmitt was taunted and called a "scammer" after taking sick leave, Sgt. Mai's "offer" to take even more time off was not a reasonable one.

Defendants also argue that Schmitt should have used the "proper channels" to receive official reasonable accommodations from the NYPD. (ECF No. 26 at 22). This argument similarly fails. If Defendants were "on notice" of Schmitt's disabilities, they were required to provide him with reasonable accommodations in accordance with the ADA regardless of whether he made formal requests to a different office. As discussed above, there is an issue of fact whether Sgt. Mai and Lt. Campos knew about Schmitt's symptoms relating to his IBS, orthostatic hypotension, and hyponatremia. Therefore, Defendants motion for summary judgment of Schmitt's reasonable accommodation claims is denied.

## V.     Schmitt's Retaliation Claims

To make a *prima facie* case of retaliation, Schmitt must show that: "(1) [he] engaged in a protected activity, (2) [Defendants were] aware of this activity, (3) [Defendants] took adverse employment action against [him], and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 703 F.3d 115, 125 (2d Cir. 2013).[4] Reasonable requests for accommodations, formal complaints, and informal complaints of discrimination are considered protected activities under the statute. *Vale*, 80 F. Supp. 3d at 439. Plaintiff engaged in protected activities when he took sick leave, requested a cooler post, requested air conditioning in the prisoner cell area, requested to use a bathroom other than the prisoner

---

[4] The standard for pleading a *prima facie* case for retaliation claims under the ADA and NYSHRL is the same. *Kemp v. Metro-N. R.R.*, 316 F. App'x 25, 26 (2d Cir. 2009).

bathroom, requested the ability to wear black orthopedic sneakers, requested a chair while he took his post as "door greeter," requested to take personal breaks due to his IBS, complained to the EEO Office about the assignments given to him by Sgt. Mai and Lt. Campos, and filed a complaint with the Division of Human Rights. Defendants were aware of these protected activities.

"Unlike claims of discrimination, which limit what qualifies as an adverse employment action to changes in the terms and conditions of employment, adverse employment actions in the context of a claim of retaliation are much broader." *Id.* The applicable test in the retaliation context is that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Here, the Court has already found that there is a genuine issue of material fact whether Defendants engaged in adverse employment actions under the more demanding standard for traditional claims of disability discrimination. Therefore, those same actions could qualify as adverse employment actions under the more lenient standard for retaliation claims under the ADA by dissuading Schmitt from making or supporting a charge of discrimination. *Vale*, 80 F. Supp. 3d at 440.

A jury can infer a causal connection between the alleged adverse employment action and the protected activity based on certain remarks made by Defendants. *Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (holding that remarks regarding hiring someone "younger and cheaper" were direct evidence of discrimination). Schmitt argues that Sgt. Mai's characterization of Plaintiff to others as a "fucking scammer" and her pronouncement that she wanted to "fuck with him" because of that is direct evidence of discriminatory animus. Defendants argue that those statements are inadmissible hearsay. Defendants are incorrect. "Hearsay" is a

statement that a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Schmitt is not offering this statement as evidence to prove that he is actually a "scammer." Therefore, these remarks are not hearsay. However, as discussed above, there is a genuine issue of material fact whether these remarks show that Sgt. Mai and Lt. Campos had discriminatory animus toward Schmitt because of his disabilities.

"Close temporal proximity between a plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." *Vale*, 80 F. Supp. 3d at 440-41. There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). However, "courts in this Circuit have often found that a temporal gap of approximately three months between the protected activity and the adverse action, without more, prohibits an inference of causation." *Vale*, 80 F. Supp. 3d at 441. On the other hand, when a "pattern of antagonism" occurs during the intervening period, a jury may still find a causal connection between the protected activity and the adverse employment action. *Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-5612 (SJF), 2012 WL 3646935, at *14 (E.D.N.Y. Aug. 22, 2012). Police officers at TD 34 overheard Sgt. Mai calling Schmitt a "fucking scammer" as soon as he returned from sick leave. Eight months later and two days after the Medical Division recommended that Schmitt stay on light duty, Sgt. Mai transferred him to her squad to she could "fuck with him." In the meantime, Schmitt was subjected to a "pattern of antagonism" through alcohol-related cartoons and advertisements. Defendants' subsequent conduct within days of the transfer further creates an issue of fact as to the causal connection between the adverse actions and Schmitt's protected activities. Therefore, Defendants'

motion for summary judgment of Schmitt's retaliation claims under the ADA and NYSHRL is denied.

Just like traditional disability discrimination claims, retaliation claims under the NYCHRL cover a broader range of conduct than their state and federal counterparts. *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 76 (2d Cir. 2015). To prevail on a retaliation claim under the NYCHRL, Plaintiff must show that "he took an action opposing his employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such an action." *Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13-CV-1257 (RRM), 2015 WL 5437575, at *14 (E.D.N.Y. Sept. 15, 2015). For the reasons set forth above, Defendant's motion for summary judgment of Schmitt's retaliation claim under the NYCHRL is denied.

## VI. Defendants Sgt. Mai and Lt. Campos

Defendants argue that Sgt. Mai and Lt. Campos cannot be named as Defendants in their individual capacities because they did not engage in discriminatory conduct. Schmitt argues that because Sgt. Mai and Lt. Campos were personally responsible for the adverse employment actions, they are properly joined. Individual defendants with supervisory control over a plaintiff cannot be held personally liable under Title VII. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995). Because Title VII and the ADA are very similar, courts routinely apply arguments regarding individual liability to those statutes interchangeably. *Martin v. Chem. Bank*, No. 95-cv-9015 (JON), 1997 WL 701359, at *3 (2d Cir. Nov. 10, 1997). Therefore, Schmitt's claims under the ADA against Sgt. Mai and Lt. Campos are dismissed.

Under the Human Rights Laws, however, supervisors who "actually participate[] in the conduct giving rise to a discrimination claim may be held personally liable . . . ." *Tomka*, 66 F.3d

at 1317.  Defendants argue that because there is a disagreement among state and federal courts regarding the Second Circuit's interpretation of the NYSHRL and whether it imposes individual liability on individual defendants, the Court should decline to exercise supplemental jurisdiction over those claims.  The Court rejects that argument and chooses to follow the Second Circuit's decision in *Feingold*, 366 F.3d at 158 n.19, which reaffirmed its holding in *Tomka* that there is a cause of action against individual defendants under the aid-or-abet provision of the NYSHRL.  The Court will exercise supplemental jurisdiction over Schmitt's claims because they are so related to his ADA claims against the City of New York that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C.A. § 1367(a).

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **DENIED**.

SO ORDERED.

Dated:      Brooklyn, New York
              November 1, 2018

/s/                               
I. Leo Glasser                      U.S.D.J.